ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JOSÉ FRANCISCO SANTOS RIVERA<br><br>Apelante<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC.<br><br>Apelado | KLAN202300683 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Núm.: CG2020CV02451<br><br>Sobre: Discrimen (Ley Núm. 100) y otros |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Adames Soto, la Juez Aldebol Mora y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de abril de 2024.

Comparece la parte apelante, señor José Francisco Santos Rivera (señor Santos Rivera o apelante), quien nos solicita la revocación de la *Sentencia* emitida el 11 de julio de 2023, notificada el 17 del mismo mes, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). En el referido dictamen, el TPI declaró HA LUGAR la *Moción de Sentencia Sumaria* presentada por Mennonite General Hospital, Inc. (Mennonite o apelada). En consecuencia, ordenó la desestimación de la *Querella* por discrimen de edad y represalias presentada por el apelante.

Anticipamos la confirmación del pronunciamiento judicial impugnado.

### I.

El 19 de noviembre de 2020, el señor Santos Rivera presentó una *Querella* contra Mennonite, al amparo del procedimiento sumario provisto por la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*[2] Santos Rivera adujo que al momento de la

---

[1] El Hon. José I. Campos Pérez sustituyó al Hon. Abelardo Bermúdez Torres, por virtud de la Orden Administrativa TA-2023-212, emitida el 6 de diciembre de 2023.
[2] Apéndice 2 de la parte apelante, págs. 24-28.

Número Identificador

SEN2024_____

presentación de la *Querella* tenía 69 años de edad, que había comenzado a trabajar con la parte apelada alrededor del mes de septiembre de 2011 y que su desempeño en el empleo siempre había sido de excelencia. Además, alegó que ocupaba el puesto de oficinista en el Departamento de Información de Mennonite. Sin embargo, señaló que la directora del Departamento de Información de Salud, la señora Ruth E. Nater (señora Nater), y la directora del Departamento de Ingeniería, Irma Rivera (señora Rivera), tomaron varias acciones adversas en su contra por motivo de edad y en represalia por sus actividades protegidas. Por ejemplo, el señor Santos Rivera arguyó que había recibido comentarios discriminatorios relacionados a su edad, críticas por su desempeño en la posición como oficinista, amonestaciones delante de otros empleados y amenazas de despido por razones injustificadas. Asimismo, el señor Santos Rivera señaló que en varias ocasiones se había quejado con la parte apelada acerca de las acciones tomadas en su contra por los oficiales de esta última. No obstante, arguyó que nunca se tomó ninguna acción correctiva, de modo que se creó un ambiente hostil.

Así pues, debido a la falta de acciones correctivas por parte de Mennonite, el 16 de enero de 2020 el señor Santos Rivera radicó un cargo por discrimen ante la Comisión para la Igualdad de Oportunidades en el Empleo (EEOC por sus siglas en inglés) y la Unidad Anti-Discrimen (UAD). Arguyó, que luego de haber radicado el cargo de discrimen, y haberlo notificado a la parte apelada el 22 de enero de 2020, se le entregó una carta mediante la cual se le informó que lo cambiarían de puesto, efectivo el 27 de enero de 2020. Mediante este cambio ocuparía la posición de anfitrión en el Departamento de Sala de Emergencias, donde realizaría funciones diferentes a las que realizaba en su puesto de oficinista. Además, puntualizó que su puesto de oficinista había sido asignado a un

empleado más joven, con menos antigüedad y experiencia que Santos Rivera. También, señaló que una vez asumió el puesto de anfitrión no se le ofreció ningún tipo de adiestramiento ni asistencia.

Por último, el señor Santos Rivera argumentó en la *Querella* que alrededor del 18 de marzo de 2020, la parte apelada lo había suspendió de empleo y sueldo, alegando que fue por motivo del COVID-19. Sin embargo, expresó que la parte apelada continuó operando y que lo reemplazó por un empleado de menor edad, con menos experiencia y antigüedad. Así pues, el señor Santos Rivera aseguró que se trataba de una suspensión de empleo por razones injustificadas y discriminatorias en violación a las leyes 115, *infra*, 100, *infra*, y 80. En consecuencia, solicitó una cantidad no menor de $100,000.00 por daños, sufrimientos y angustias mentales; compensación económica por todos los daños económicos sufridos en una cantidad no menor de $100,000.00; doble penalidad impuesta por la ley; la reinstalación a la posición que ocupaba en el Departamento de Información y; el pago de todos los gastos, costas, y honorarios de abogado, cualquier remedio que en ley o equidad proceda, así como el pago de intereses sobre cualquier sentencia dictada.

El 14 de diciembre de 2020, Mennonite negó las alegaciones en su contra y levantó sus defensas afirmativas en su *Contestación a Querella*.[3] Asimismo, alegó afirmativamente que: las evaluaciones del señor Santos Rivera habían variado durante su tiempo como empleado; las acciones tomadas por Mennonite y sus representantes fueron basadas en el desempeño deficiente del señor Santos Rivera y en el impacto negativo de dicho desempeño en las operaciones de la empresa; las decisiones tomadas se hicieron para salvaguardar la sana y buena administración de Mennonite y fueron realizadas

---

[3] Apéndice 3 de la parte apelante, págs. 29-39.

dentro de la prerrogativa gerencial que esta tenía para operar; cuenta con un proceso de querellas establecido en el Manual de Empleados, en el cual el señor Santos Rivera nunca presentó queja alguna sobre discrimen por edad; advino en conocimiento de las alegaciones de discrimen mediante el cargo de discrimen presentado por el señor Santos Rivera y; el puesto del señor Santos Rivera fue cubierto por un empleado de una compañía subcontratada, el cual contaba con los requisitos y competencias necesarias para llevar a cabo dichas funciones.

Luego de varios trámites procesales, el 12 de abril de 2022, Mennonite presentó *Solicitud de Sentencia Sumaria*.[4] En esta, Mennonite indicó que procedía la desestimación total de la *Querella*, toda vez que no existía controversia sobre el hecho de que no discriminó contra la parte apelante por razón de edad, ni incurrió en actos de represalia. Además, señaló que tampoco existía controversia sobre el hecho de que en el lugar de trabajo no había un ambiente hostil. Según Mennonite, los hechos incontrovertidos en este caso demostraban que el ambiente de trabajo no estaba permeado de burlas ni insultos que alteraran las condiciones del empleo del señor Santos Rivera. Igualmente, arguyó que una vez advino en conocimiento de los alegados comentarios, tomó medidas correctivas. Asimismo, señaló que el cambio de posición del señor Santos Rivera se debió a su bajo desempeño y la necesidad de salvaguardar la buena administración del Departamento de Información, por lo que no tuvo que ver con la reclamación ante las agencias administrativas. Así pues, alegó que no quedó establecido un caso *prima facie* por represalia. De igual forma, puntualizó que el cambio de posición no constituyó una acción adversa al empleo, puesto que la posición de anfitrión en la Sala de Emergencia

---

[4] Apéndice 5 de la parte apelante, págs. 41-165.

requería menos esfuerzo en comparación a la posición previa. También, expresó que la suspensión entre marzo y octubre de 2020 se debió a una decisión operacional como consecuencia directa de la baja en el censo por el COVID-19. Por último, planteó que la acción estaba prescrita.

Por su parte, el 27 de junio de 2022, el señor Santos Rivera presentó su *Oposición a la Moción de Sentencia Sumaria* en la cual estableció que existían hechos en controversia que impedían la disposición del caso mediante sentencia sumaria.[5] En resumen, el señor Santos Rivera sostuvo que la parte apelada tomó acciones adversas en su contra por las quejas y comentarios discriminatorios que este presentó por correo electrónico y por la radicación de un cargo de discrimen ante las agencias administrativas. Entre dichas acciones adversas se encontraban: comentarios discriminatorios y represalia por sus quejas; críticas por su desempeño laboral; transferencia de puesto y cesantía. Además, adujo que dichas acciones también crearon un ambiente hostil de trabajo. Asimismo, señaló que nunca se tomaron acciones correctivas a pesar de las quejas y que había establecido un caso *prima facie* de discrimen por razón de edad. Adujo, además, que las acciones discriminatorias y en represalias realizadas por la parte apelada tuvo un efecto negativo en su salud emocional, por lo que tuvo que recurrir a tratamiento psiquiátrico.

El 14 de julio de 2022, el TPI emitió una orden donde convirtió el procedimiento en uno ordinario.[6]

Posteriormente, Monnonite presentó su *Réplica a "Oposición a Moción en Solicitud de Sentencia Sumaria".*[7] Mennonite argumentó que la decisión de cambiar al señor Santos Rivera de posición se

---

[5] Apéndice 6 de la parte apelante, págs. 166-236.
[6] Apéndice 4 de la parte apelante, pág. 40.
[7] Apéndice 7 de la parte apelante, págs. 237-295.

había discutido desde antes de la presentación de la queja ante el EEOC, por lo que no estuvo motivado por el cargo que este presentó en dicha agencia. Aclaró, además, que dicho cambio se llevó a cabo por razones operacionales. También, arguyó que el cambio no fue una acción adversa, toda vez el señor Santos Rivera mantuvo el mismo sueldo, horario, beneficios y las nuevas funciones no requerían de un esfuerzo físico mayor. Asimismo, apuntó que la alegación de discrimen por ambiente hostil se basaba en la conducta de los compañeros de trabajo del señor Santos Rivera y no de la supervisora de este. Por último, planteó que el señor Santos Rivera no había sido cesanteado, sino que había sido suspendido por motivos de censo bajo.

Por su parte, el señor Santos Rivera ripostó con su *Oposición del querellante a la Réplica a Moción de Sentencia Sumaria*.[8] Mediante esta reiteró que existen hechos materiales en controversia que impiden que se dicte sentencia sumaria en el caso. Además, apuntó que la réplica radicada por la parte apelada era una repetición de las mismas alegaciones que aparecen en la *Moción de Sentencia Sumaria.*

El 11 de julio de 2023, el foro primario dictó *Sentencia,* notificada el día 17 del mismo mes.[9] El TPI determinó que no había controversia sustancial sobre los siguientes hechos:

1. El señor Santos Rivera nació el 9 de diciembre de 1950, actualmente tiene 72 años.

2. El 12 de septiembre de 2011, el señor Santos Rivera comenzó a trabajar como empleado temporero en el Hospital Menonita y asignado a la posición de guarda almacén con el propósito de, entre otras cosas, localizar

---

[8] Apéndice 8 de la parte apelante, págs. 296-298.
[9] Apéndice 1 de la parte apelante, págs. 1-23.

los récords médicos inactivos y devolverlos una vez se utilicen.

3. El 1 de junio de 2012, fue contratado como empleado regular para la posición de oficinista de récord médico-almacén expedientes inactivos.

4. Ese cambio de posición, sin embargo, no fue sustancial ni requirió esfuerzo físico adicional ya que posterior al 2012 el querellante continuó trabajando en el área del almacén con los récords médicos del hospital.

5. El señor Santos Rivera permaneció en dicha posición hasta que fue transferido a la posición de anfitrión en el Departamento de Sala de Emergencias.

6. Al presente, el señor Santos Rivera continúa trabajando como anfitrión en el Departamento de Sala de Emergencias del Hospital.

7. El 28 de junio de 2019, el señor Santos Rivera se reunió con la Sra. Evelyn Padilla Ortiz, directora de recursos humanos, para discutir varios incidentes que habían ocurrido.

8. En dicha reunión, el señor Santos Rivera le admitió a la señora Padilla que hace bromas con los empleados de ingeniería, que estos le decían comentarios relacionados a su edad y que él les decía lo mismo a ellos en un ambiente de confianza.

9. Los comentarios alegados eran [de los] amigos de trabajo que laboran en el departamento de ingeniería, departamento ajeno al del señor Santos Rivera.

10. El señor Santos Rivera le indicó a la señora Padilla que no se había quejado porque no le molestaban los comentarios y que se hacían en forma de broma.

11. Por otro lado, reconoció que no quería que se les amonestara a los empleados de ingeniería porque tiene mucha confianza con ellos, comparten, bromean y que se siente parte del grupo.

12. El señor Santos Rivera leyó y firmó las páginas de la minuta de entrevista relatando lo discutido con la señora Padilla.

13. Después de la reunión, el señor Santos Rivera reconoció que los empleados de ingeniería le comentaron que recibieron instrucciones de parte de la directora del Departamento de Ingeniería de que no se comunicaran más con el señor Santos Rivera.

14. La directora del Departamento de Ingeniería, la Sra. Irma Rivera Rivera, se reunió con los empleados de ingeniería y les reiteró las políticas sobre igualdad de empleo. También les solicitó que se trataran con respeto.

15. A partir de esa instrucción a los empleados de ingeniería, el señor Santos Rivera no volvió a mencionar que le estaban haciendo comentarios sobre su edad, ni que estaban discriminando en su contra.

16. Hace varios años atrás, el 7 de octubre de 2016, se le orientó al señor Santos Rivera sobre utilizar la puerta asignada para el acceso al almacén y no la del taller de ingeniería. También, se le prohibió que interrumpiera a los empleados de ingeniería durante su periodo de receso.

17. El señor Santos Rivera, no obstante, ha insistido en entrar por el taller de ingeniería.

18. A pesar de las instrucciones recibidas, el señor Santos Rivera reconoció que continúa visitando a los

compañeros de ingeniería (que antes le decían "viejo") y que va a dicho departamento todos los días a beber café.

19. Días después de la reunión con la señora Padilla, el 3 de julio de 2019, el señor Santos Rivera le envió una carta al Sr. Rubén Norat Roig, en ese momento Administrador del Hospital.

20. En dicha misiva, el señor Santos Rivera expuso su posición sobre varios asuntos, no mencionó que estaba recibiendo comentarios de su edad ni que estaba siendo discriminado.

21. El señor Santos Rivera admitió en su deposición que en ningún momento recibió insultos o comentarios despectivos de sus oficiales o gerentes sobre su edad.

22. También reconoció que nadie, incluyendo sus superiores, le han mencionado [que] sería despedido.

23. En su deposición, el señor Santos Rivera aceptó que, si el Hospital lo transfiere al puesto que tenía antes, estaría contento y no le interesaría seguir más con el caso.

24. El 30 de julio de 2019, el señor Santos Rivera fue evaluado y según se desprende de los resultados este no dominaba 9 de las 23 competencias de su puesto, lo cual redundó en una puntuación de 69% en el criterio de competencia.

25. Sus deficiencias incluían, entre otras, dificultad para seguir instrucciones, acumulación de expedientes devueltos para re archivar, priorizar expedientes que se le solicitan para re archivar los que le devuelven y distribuir su tiempo en otras tareas.

26. Varios meses después, el 11 de noviembre de 2019, el señor Santos Rivera envió un correo electrónico al

Departamento de Recursos Humanos en respuesta a la evaluación realizada el 30 de julio de 2019.

27. [E]l señor Santos Rivera no mencionó en su comunicación del 11 de noviembre de 2019, que estaba recibiendo comentarios de su edad, ni que estaban discriminando en su contra.

28. Entre finales de noviembre y a principio de diciembre de 2019, la señora Padilla y la Sra. Sharily Contreras, Directora de Recursos Humanos corporativo, se reunieron con el demandante para informarle que sería transferido al puesto de anfitrión de Sala de Emergencias.

29. El 16 de diciembre de 2019, el señor Santos Rivera envió un correo electrónico a la señora Contreras, debido a que tenía que dialogar sobre la posición de anfitrión en la Sala de Emergencias.

30. El 16 de enero de 2020, el señor Santos Rivera presentó una querella ante la Comisión para la Igual de Oportunidades en el Empleo ("EEOC").

31. Antes de esa fecha ya el Hospital le había notificado al señor Santos Rivera que sería cambiado de posición.

32. La querella presentada por el señor Santos Rivera ante el EEOC fue desestimada.

33. El 27 de enero de 2020 el señor Santos Rivera comenzó a trabajar como anfitrión en la sala de emergencias.

34. Su salario, horario y beneficios después de ser transferido al Departamento de Sala de Emergencias se mantuvieron igual.

35. Como anfitrión en la sala de emergencias, el señor Santos Rivera, entre otras cosas, atiende a las personas

que visitan la sala de emergencias del Hospital, controla adecuadamente el acceso de visitantes a diferentes áreas de la sala de emergencia y se asegura de orientar a los visitantes y pacientes sobre las reglas del hospital.

36. El cambio de puesto del señor Santos Rivera fue realizado para salvaguardar la salud del empleado y para velar por la buena y sana administración del Hospital, específicamente, del Departamento de Información de Salud.

37. El Hospital tomó la decisión de transferir al señor Santos Rivera de su puesto luego de varios incidentes con sus compañeros, deficiencias en el desempeño de su trabajo y por no seguir instrucciones.

38. Desde que el señor Santos Rivera comenzó a laborar en el Hospital, ha sido orientado y amonestado en más de una ocasión por, entre otras cosas, no seguir instrucciones, incumplir con sus funciones y/o no hacer el trabajo [conforme] a los procesos establecidos.

39. El 2 de enero de 2013, la Sra. Evelyn Padilla, Directora de Recursos Humanos y el Lcdo. René Rivera Molina, Administrador del Hospital Menonita, se reunieron con el señor Santos Rivera para explicarle la importancia de su trabajo y para discutir otros asuntos, entre estos, las quejas que habían hecho los empleados sobre su comportamiento.

40. El 11 de diciembre de 2014, el señor Santos Rivera fue amonestado por escrito por no consultar con el director si podía borrar notas sobre expedientes inactivos.

41. Al mes siguiente, el 12 de enero de 2015, recibió una amonestación en la cual se le informó, entre otras

cosas, los incumplimientos en el desempeño de sus funciones y por tomar decisiones sin consultar con el director.

42. El 7 de octubre de 2016, se le orientó al señor Santos Rivera sobre el uso de la puerta asignada para el acceso al almacén y se le solicitó que no interrumpiera al personal de ingeniería en su periodo de receso ya que no todos están libres al mismo tiempo.

43. El 9 de agosto de 2017, el señor Santos Rivera recibió una amonestación escrita por incumplir con el procedimiento establecido para la inactivación de expedientes clínicos y la entrada de información.

44. El 9 de abril de 2018, la supervisora se reunió con el señor Santos Rivera debido a que dos (2) expedientes que fueron inactivados no se encontraban en el archivo inactivo. Por lo que, se le orientó al señor Santos Rivera sobre el procedimiento establecido.

45. El 16 de abril de 2018, el señor Santos Rivera solicitó una reunión con la Sra. Nater para discutir varios asuntos relacionados al trabajo que había realizado con unos expedientes. En dicha reunión la Sra. Nater le clarificó los procedimientos que debía seguir.

46. El 18 de junio de 2019, el que el señor Santos Rivera se refirió a su compañero, el señor Edwin Cotto ("Sr. Cotto") como "mascota".

47. El 19 de junio de 2019, el Hospital Menonita entrevistó a la señora Cecilia Rodríguez y esta reportó que el señor Santos Rivera llegó de enfermedad haciendo comentarios hostiles y hablando de forma retante.

48. El 26 de junio de 2019, el querellante llamó a al Sr. Cotto fuera de horas laborables para cuestionarle sobre el trabajo que había hecho.

49. Ese mismo día, la señora Verónica Santoyo observó al señor Santos Rivera en su área de trabajo fuera de horas laborables verificando expedientes inactivos.

50. Luego de entrevistar al Sr. Cotto y a la Sra. Santoyo por los incidentes antes mencionados, la Sra. Nater concluyó que el señor Santos Rivera continuaba presentando insubordinación y no seguía instrucciones.

51. Por motivos del censo bajo en el Hospital Menonita a causa del COVID-19, el querellante estuvo suspendido desde el 19 de marzo de 2020 hasta el 23 de octubre de 2020.

52. Luego de agotar las horas acumuladas por vacaciones, el señor Santos Rivera recibió desempleo.

53. El señor Santos Rivera reconoció que por sus condiciones de salud agradecía estar fuera del hospital durante el COVID-19 y el censo bajo.

En consecuencia, el TPI se declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por la parte apelada. A su vez, ordenó la desestimación de la *Querella* por discrimen de edad y represalias.

Inconforme, con la determinación del TPI, el señor Santos Rivera acudió ante nos el 7 de agosto de 2023 mediante recurso de *Apelación*. En su escrito, señala los siguientes señalamientos de error:

**PRIMER SEÑALAMIENTO DE ERROR**
Erró el TPI, en su conclusión de que Santos Rivera no estableció un caso *prima facie* de discrimen por razón de su edad, debido a que no presentó hechos f[á]cticos sobre su edad, ni que lo identifique dentro de algún grupo protegido por su edad bajo la Ley N[ú]m. 100, lo cual es incorrecto, debido a que Santos Rivera

estableció en el párrafo 1 de la *Sentencia*, que su fecha de nacimiento fue el 9 de diciembre del 1950, y que a la fecha de radicación de la *Oposición a la Moción de Sentencia Sumaria*, tenía 72 años de edad, por lo que Santos Rivera estableció que pertenecía a un grupo protegido bajo la ley Núm. 100, supra, por razón de edad.

**SEGUNDO SEÑALAMIENTO DE ERROR**
Erró el TPI, en su conclusión de que el desempeño de Santos Rivera era deficiente, y que este no cumplía con los requisitos mínimos de su posición, no empece a que Santos Rivera, en los párrafos 26, 35, y 50, estableció que su desempeño era de excelencia, que cumplía con diligencia, y de forma y manera excelente con todos sus deberes y funciones de su posición, y que su evaluación, en la que el TPI descansó para concluir que su desempeño era deficiente y que no cumplía con los requisitos de su posición, fue objetada y refutada, por escrito, por Santos Rivera, el 11 de noviembre del 2019, debido a que su evaluación fue injusta debido a que el desempeño de Santos Rivera, en todo momento, fue de excelencia. Ante lo anterior, existía una controversia de hechos materiales relacionada a si el desempeño de Santos Rivera, cumplía con las expectativas de su posición o no, que impedían dictar sentencia sumariamente.

**TERCER SEÑALAMIENTO DE ERROR**
Erró el TPI en su conclusión de que, luego de que el Hospital Menonita advino en conocimiento de los comentarios discriminatorios en contra de Santos Rivera, tomó acciones correctivas y le puso fin a tales actuaciones discriminatorias en contra de Santos Rivera, debido a que el apelante, en la oposición, alegó que los supervisores de la apelada nunca se reunieron con los empleados del Departamento de ingeniería para reiterarles las políticas de igualdad en el empleo, y nunca le indicaron a estos que no podían continuar refiriéndose a Santos Rivera, como "viejo pato", "viejo cabr[ó]n", y "viejo pendejo", que era la forma de los empleados y supervisores de Santos Rivera en el Departamento de Ingeniería, referirse a Santos Rivera. Santos Rivera estableció en su *Oposición*, que no empece a las alegadas medidas correctivas, tomadas por el Hospital, sus supervisores continuaban refiriéndose a su persona como "viejo pato", razón por la cual Santos Rivera continuó con sus quejas de discrimen, por escrito, el 3 de julio del 2019, el 16 de noviembre del 2019, y a través de un cargo de discrimen radicado el 16 de enero del 2020, por lo que resulta un hecho material en controversia, si el Hospital Menonita tomó acciones correctivas efectivas con respecto a las quejas de Santos Rivera o no, que impedían dictar sentencia sumariamente en la reclamación de discrimen por razón de edad.

**CUARTO SEÑALAMIENTO DE ERROR**
Erró el TPI en su conclusión de que Santos Rivera, por motivo a que desconoce la fecha de nacimiento y la edad espec[í]fica, de los empleados que lo reemplazaron en la

posición que ocupaba en el Departamento de informática, así como de los empleados que continuaron trabajando durante la emergencia del COVID 19, y los que lo reemplazaron en su posición de anfitrión de sala de emergencias durante la emergencia del COVID 19, mientras que Santos Rivera, fue suspendido de empleo y sueldo, el apelante se encuentra entonces imposibilitado de establecer un caso *prima facie* de discrimen por razón de edad, debido a que, según el TPI, el apelante tenía que conocer la fecha de nacimiento y edad espec[í]fica de cada uno de estos, para poder establecer su caso *prima facie* de discrimen, debido a que su conocimiento personal de que eran más jóvenes que él, resultaba insuficiente para poder establecer un caso prima facie de discrimen por razón de su edad, lo cual es un error.

**QUINTO SEÑALAMIENTO DE ERROR**
Erró el TPI en su conclusión de que Santos Rivera, no pudo establecer un caso de discrimen por razón de edad, así como tampoco de ambiente hostil, por razón de su edad, no empece a que Santos Rivera estableció que sus supervisores en el Departamento de Ingeniería, constantemente se referían hacia su persona como: "viejo pato", "viejo cabr[ó]n", y "viejo pendejo", y que hasta inclusive, amenazaron al apelante de agredirlo físicamente, y que no empece a sus quejas, dichos comentarios discriminatorios, continuaron, por motivo de lo cual Santos Rivera ha tenido que recibir tratamiento psiquiátrico y psicológico, así como ambulatoria en el hospital psiquiátrico Caguas Capestrano, por lo cual Santos Rivera estableció un caso *prima facie* de discrimen, así como de ambiente hostil, por motivo a su edad.

**SEXTO SEÑALAMIENTO DE ERROR**
Erró el TPI en su conclusión de que la única actividad protegida de Santos Rivera fue la radicación de un cargo de discrimen ante la Unidad Antidiscrimen, y el EEOC, y que como la notificación del traslado de Santos Rivera a la posición de anfitrión de Sala de Emergencias había ocurrido antes de la radicación del cargo de discrimen, Santos Rivera no pudo establecer su caso de represalias bajo la Ley Núm. 115, *supra*, lo cual es un error.

**SEPTIMO SEÑALAMIENTO DE ERROR**
Erró el TPI en su conclusión de que la suspensión de empleo y sueldo de Santos Rivera, del 19 de marzo del 2020, hasta el 23 de octubre del 2020, fue una justificada, lo cual es un error, y por lo menos, un hecho material en controversia, que impedían dictar sentencia sumariamente en el caso.

**OCTAVO SEÑALAMIENTO DE ERROR**
Erró el TPI en su conclusión de que por motivo a que Santos Rivera continúa trabajando en el Hospital, y que retuvo el mismo salario y beneficios, este no ha sufrido una acción adversa, lo cual es un error, debido a que Santos Rivera estableció que las acciones de sus supervisores en el Departamento de ingeniería, de

referirse hacia su persona, constantemente como "viejo pato", "viejo pendejo", "viejo cabr[ó]n", las amenazas de agredirlo físicamente, así como el cambio a la posición de anfitrión de Sala de Emergencias, y la suspensión de empleo y sueldo por 8 meses, lo afectaron emocionalmente, por lo que tuvo que recibir tratamiento psiquiátrico, por lo que sin duda alguna, dichas acciones, son adversas, y afectaron los términos y condiciones de trabajo de Santos Rivera, su compensación económica, y su condición mental, y emocional, por lo que el TPI erró en no considerar los mismo en su decisión errada de que Santos Rivera no había sufrido de una acción adversa en el trabajo.

El 29 de septiembre de 2023 la parte apelada presentó su *Alegato en Oposición a Apelación.* Con el beneficio de la comparecencia de ambas partes, procedemos a resolver

**II.**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario." *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

La Regla 36.2 del mismo ordenamiento procesal, establece que la parte contra la cual se haya formulado una reclamación podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V, R. 36.2. Por su lado, conforme la Regla 36.3 de Procedimiento Civil, *supra*, en su contestación, la parte promovida "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede". 32 LPRA Ap. V, R. 36.3 (c). Asimismo, la Regla 36.3 de Procedimiento Civil, *supra*, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. 32 LPRA Ap. V, R. 36.3; Véase, *Pérez Vargas v. Office Depot, supra*, pág. 698. Por consiguiente, el incumplimiento del promovente de estas formalidades acarrea que el tribunal no esté obligado a considerar su pedimento. *Meléndez González et al. v. M. Cuebas, supra*, pág. 111. En caso de que el promovido sea quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

Ahora bien, la sentencia sumaria sólo debe dictarse en casos claros. Por tanto, cuando no existe una certeza prístina sobre todos los hechos materiales que motivaron el pleito, no procede que se dicte sentencia sumaria. *Pérez Vargas v. Office Depot, supra*, pág. 699 y los casos allí citados. Por ser este un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso

de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando **surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia**". (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas, supra*, págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012). De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 133.

En cuanto a la revisión de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Esto es, no estamos compelidos a adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335. El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo

pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.* Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces **nos corresponde revisar *de novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos**. *Id.*, pág. 119. En resumen, al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y en la oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, *supra*, pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria si: (1) existen hechos materiales controvertidos; (2) hay alegaciones en la demanda que no han sido refutadas; (3) surge de los documentos que se acompañan con la moción una controversia real sobre algún hecho esencial; o (4) como cuestión de derecho no procede. *Id.*, págs. 333-334.

**B.**

Por imperativo constitucional, se prohíbe el discrimen por razón de edad. Art. II, Sec. 1, Const. ELA PR, LPRA, Tomo 1. Asimismo, nuestra constitución establece que "[t]anto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana". *Id.*

En el ámbito laboral, la Asamblea Legislativa mediante la aprobación de la Ley Núm.100 de 30 de junio de 1959 (Ley Núm. 100), conocida como la *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec. 146 *et seq*, según enmendada, le brindó a la clase obrera del país una protección estatutaria contra cualquier discrimen, incluyendo la edad, por parte de los patronos. *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 67 (2008). En lo pertinente, el Artículo 1 de la *Ley Núm. 100, supra*, establece que:

> [t]odo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status de empleado, **por razón de edad**, según ésta se define más adelante, raza, color, sexo, orientación sexual, identidad de género, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, o por ser militar, ex-militar, servir o haber servido en las Fuerzas Armadas de los Estados Unidos o por ostentar la condición de veterano del empleado o solicitante de empleo:

En otras palabras, bajo el referido estatuto se prohíbe que un patrono discrimine contra su empleado o candidato por razón de edad. Así pues, de incurrir un patrono en conducta constitutiva de discrimen, la ley le impone responsabilidad civil al igual que responsabilidad penal. En cuanto a esto último dispone el referido Artículo 1, *supra*, que:

(a) Incurrirá en responsabilidad civil:

(1) Por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo;
(2) o por una suma no menor de quinientos dólares ($500) ni mayor de dos mil dólares ($2,000), a discreción del tribunal, si no se pudieren determinar daños pecuniarios;
(3) o el doble de la cantidad de los daños ocasionados, si ésta fuere inferior a la suma de quinientos dólares ($500), e
(b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa de hasta cinco mil dólares ($5,000), o cárcel por un término no mayor de noventa (90) días, o ambas penas, a discreción del tribunal.

Cabe señalar que la Ley Núm. 4-2017 (Ley 4-2017), conocida como *Ley de Reforma Laboral*, impone topes a los daños que podrían ser compensados, según el número de empleados del patrono. El Artículo 6.1, 29 LPRA Sec. 123, del referido estatuto establece que:

En todos los casos de discrimen o represalia en el empleo, un empleado, de prevalecer, tendrá derecho a ser compensado por la totalidad de los salarios y beneficios dejados de devengar, y en los casos apropiados, salarios y beneficios futuros. Cualquier disposición de ley sobre discrimen o represalia ilegal en el empleo que requiera compensar al empleado por el doble de los daños sufridos, continuará en vigor. No obstante, lo dispuesto en cualquier ley de discrimen o represalia ilegal en el empleo, la cuantía de daños recobrables por concepto de angustias o sufrimientos mentales, otros daños compensatorios y daños punitivos, de proceder, quedarán sujeto a los siguientes límites monetarios, a base de la cantidad de empleados del patrono:
Menos de 101 empleados: $50,000
101 a 200 empleados: $100,000
201 a 500 empleados: $200,000
501 empleados o más: $300,000

Asimismo, la Ley 4-2017, *supra*, en el aspecto de discrimen en el empleo o represalias, establece que se podrán interpretar las disposiciones de forma cónsona con las protecciones y políticas establecidas en la legislación y reglamentación federal. Artículo 6.2, 29 LPRA Sec. 123a, de la Ley 4-2017. De esta forma, se entiende aplicable el estándar probatorio elaborado mediante la jurisprudencia federal. *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, Departamento del Trabajo y Recursos

Humanos, 1ra. ed., 8 de mayo de 2019, pág. 157. A su vez, la Ley 4-2017, *supra*, eliminó la disposición de presunción controvertible de discrimen que contenía el Artículo 3 de la Ley Núm. 100¸ *supra*, a favor del empleado. *Id.* Por tanto, aplicaría a estos casos la norma del caso *prima facie* de discrimen conforme al estándar probatorio establecido en *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Así pues, para establecer un caso *prima facie* de discrimen se tienen que alegar y probar unos elementos claves que siembren en la mente del juzgador de hechos la inferencia de que la persona: (1) pertenece a la clase protegida por la legislación; (2) está cualificada para el puesto; (3) fue objeto de una acción adversa; y (4) se benefició a otra persona que no pertenece al mismo grupo protegido. *Id.*, pág. 802; *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, *supra*, págs. 157-158.

Una vez haya quedado establecido el caso *prima facie*, le corresponde al patrono demostrar que posee una explicación razonable que justifique sus acciones y que no existe ánimo discriminatorio. *McDonnell Douglas Corp. v. Green*, *supra*; Cita a C. Zeno Santiago, *Cambios incorporados por la Ley Núm. 4 de 2017, Ley de Transformación y Flexibilidad Laboral a las leyes que prohíben el discrimen en Puerto Rico*, en Comentarios, Revisión y Ponencias sobre la Ley de Transformación y Flexibilidad Laboral de 2017, Colegio de Abogados, 2021, pág. 176. Demostrada tal justificación, se vuelve a transferir el peso de la prueba sobre el empleado, quien deberá entonces demostrar que la razón ofrecida por el patrono resulta ser un subterfugio o pretexto para justificar la acción adversa. *Joy Goncalves v. Plymouth County Sheriff's Department*, 659 F.3d 101, 105 (1st Cir. 2011).

Según el profesor Charles Zeno, el estándar elaborado en *McDonnell Douglas Corp. v. Green*, *supra*, es un esquema probatorio y no un estándar que rige las alegaciones de una demanda sujeta a

una moción de desestimación, por lo que rige en la etapa de sentencia sumaria o juicio plenario, pero no aplica durante la etapa inicial de la demanda. Zeno Santiago*, op. cit.,* pág. 177 citando a *Rodríguez-Reyes v. Molina-Rodríguez,* 711 F.3d 49, 54 (1st Cir. 2013).

**C.**

La Ley Núm. 115-199 (Ley Núm. 115), 29 LPRA *et seq,* conocida como *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial,* provee protección a los empleados contra posibles represalias por parte de un patrono, por el ofrecimiento de algún testimonio o alguna información ante ciertos foros. *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 668–669 (2017). En específico, el Artículo 2 (a) dispone:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

Además, la Ley. Núm. 115 establece dos vías para que los empleados puedan establecer una causa de acción por represalias. En la primera, el empleado debe valerse de evidencia directa o circunstancial para probar una violación de la ley. Artículo 2 (c), 29 LPRA sec. 194a(c). En la segunda, el empleado puede establecer un caso *prima facie* de represalias demostrando que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado. *Id.* Establecido un caso *prima facie* por parte del empleado, el patrono deberá alegar y fundamentar una

razón legítima y no discriminatoria para la acción adversa. *S.L.G. Rivera Carrasquillo v. A.A.A.* 177 DPR, 345, 362 (2009). "De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido." Artículo 2 de Ley Núm. 115, *supra.*

En cuanto a la segunda vía, se ha establecido que la proximidad temporal entre la actividad protegida y la acción adversa debe ser cercana. *Feliciano Martes v. Sheraton*, 182 DPR 368, 397–398 (2011). Es decir, una acción adversa tomada contra un empleado inmediatamente después de que este incurra en una actividad protegida, esta constituirá prueba indirecta suficiente de la existencia de un nexo causal entre ambos acontecimientos. *Id.* No obstante, el elemento temporal no puede catalogarse como que resulta insuficiente para probar el nexo causal, por lo que se requiere que el empleado constate elementos adicionales que comprueben la existencia de dicho nexo entre la actividad protegida y la acción disciplinaria adversa. *Id.* De este modo, el trabajador deberá presentar evidencia que establezca: (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagónica en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de incongruencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Lo anterior implica, necesariamente, un acercamiento caso a caso. *Id.*

### III.

En su recurso de *Apelación*, la parte apelante presentó ocho (8) señalamientos de error. En cuanto a la causa de acción bajo la Ley Núm. 100, *supra*, solo discutiremos los errores primero, segundo, cuarto y octavo, debido a que estos están atados a los requisitos que se deben probar para establecer un caso *prima facie*, el cual es requerido para prosperar en una acción por discrimen, y

de no cumplirse, disponen de dicha causa de acción. Por otro lado, en cuanto a la causa de acción bajo la Ley Núm. 115, *supra,* solo discutiremos el sexto error el cual va dirigido a la causa de acción por represalia.

Examinada de *novo* la *Moción de Sentencia Sumaria* y su *Moción en Oposición a Sentencia Sumaria,* concluimos que procede la desestimación de la *Querella* contra Mennonite, toda vez que el señor Santos Rivera no logró establecer un caso *prima facie* bajo la Ley Núm.100, *supra,* y tampoco logró establecer su caso de represalia bajo la Ley Núm. 115, *supra.* Veamos.

En el primer error, la parte apelante señaló que el TPI había incidido al concluir que el señor Santos Rivera no estableció un caso *prima facie* de discrimen por razón de edad, puesto que no presentó hechos fácticos sobre su edad, cuando este había establecido que su fecha de nacimiento fue el 9 de diciembre de 1950. Asimismo, en el segundo error, señaló que el TPI erró al concluir que el señor Santos Rivera no cumplió con los requisitos mínimos de su puesto, a pesar de que este había establecido que su desempeño era de excelencia y había objetado las evaluaciones que le daban calificación deficiente. En el cuarto error, planteó que el TPI incidió al concluir que el apelante tenía que conocer la fecha de nacimiento y edad específica de los empleados que los reemplazaron en las posiciones que ocupaba para poder establecer un caso *prima facie* de discrimen. Por último, arguyó en su octavo error que el TPI había incidido al concluir que el señor Santos Rivera no había sufrido una acción adversa en el trabajo, a pesar de que había establecido que las acciones y comentarios discriminatorios de sus supervisores en el Departamento de Ingeniería, así como el cambio a la posición de anfitrión de Sala de Emergencias, y la suspensión de empleo y sueldo por 8 meses, lo afectaron emocionalmente. Por estar

relacionados a los requisitos de un caso *prima facie* bajo la Ley Núm. 100, *supra,* procedemos a resolver estos errores en conjunto.

Según el derecho discutido anteriormente, para que prospere una causa de acción por discrimen bajo la Ley Núm. 100, *supra,* la parte promovente deberá probar un caso *prima facie* mediante los siguientes elementos: (1) que pertenece a la clase protegida; (2) que estaba cualificado para la posición de la cual fue rechazado; (3) que sufrió una acción adversa; (4) que otra persona que no pertenece al grupo protegido se benefició de tal acción.

En cuanto al primer requisito para establecer un caso *prima facie*, no está en controversia que el señor Santos Rivera pertenezca a una clase protegida por razón de edad. Sin embargo, conforme al segundo requisito, el señor Santos Rivera tenía el peso de demostrar que estaba cualificado para la posición que fue sustituido. Surge de la prueba presentada por Mennonite que el señor Santos Rivera fue evaluado el 30 de julio de 2019 y que este no dominaba 9 de 23 competencias de su puesto.[10] Además, Mennonite presentó prueba de que el señor Santos Rivera había sido amonestado en varias ocasiones desde que inició como empleado en el Hospital.[11] Por su parte, el señor Santos Rivera no presentó evidencia de sus cualificaciones para ocupar el puesto como requiere nuestro ordenamiento jurídico. Es decir, este solo descansó en alegar que su desempeño ha sido de excelencia y que había refutado y objetado la evaluación.

Asimismo, sobre el requisito de acción adversa, el señor Santos Rivera sostiene que sufrió una acción adversa en el empleo por las acciones y comentarios discriminatorios de sus supervisores del Departamento de Ingeniería, por el cambio de posición a la Sala de Emergencia, y la suspensión de empleo y sueldo por ocho meses

---

[10] Apéndice 5 de la parte apelante, pág.109.
[11] Apéndice 5 de la parte apelante, págs. 126-134

durante la emergencia del COVID-19, lo cual afectó su salud mental. De entrada, sobre el cambio de puesto, el señor Santos Rivera admitió que su salario, horario y beneficios permanecieron iguales.[12] Además, el cambio de puesto requiere de menos esfuerzo físico.[13] Por otro lado, durante la suspensión del puesto de anfitrión en la Sala de Emergencia, el propio señor Santos Rivera testificó que estaba agradecido de que haya estado fuera de su empleo durante la emergencia del COVID-19, esto debido a sus condiciones de salud, edad y el bajo censo.[14] De igual modo, durante el tiempo que el señor Santos Rivera estuvo fuera de su empleo recibió desempleo y liquidó sus licencias de vacaciones y enfermedad.[15] Incluso, es menester señalar que al momento de la radicación de este pleito el señor Santos Rivera continuaba siendo empleado del Hospital y testificó en una deposición que estaría contento y que no seguiría con el caso si le devolvieran su antigua posición.[16]

Por otro lado, en cuanto al último requisito, el señor Santos Rivera no presentó evidencia sobre el nombre, preparación académica y edad de las personas que alegadamente lo sustituyeron en su puesto. Solo surge de las alegaciones de la *Querella* que el señor Santos Rivera alegó que fue sustituido por empleados más jóvenes, con menos experiencia y antigüedad. Sin embargo, durante la deposición que se le tomó al señor Santos Rivera, este no pudo identificar quién lo sustituyó durante la emergencia del COVID-19. El señor Santos Rivera solo testificó que lo reemplazó un anfitrión uno que otro día sin identificar a la persona.[17] Por tanto, alegar que Mennonite lo transfirió de puesto y luego lo suspendió por discrimen de edad, permaneciendo en el puesto empleados de menor edad, no

---

[12] Apéndice 6 de la parte apelante, pág. 172. (párrafo 33)
[13] Apéndice 6 de la parte apelante 172. (párrafo 34)
[14] Apéndice 5 de la parte apelante, pág. 77.
[15] Apéndice 5 de la parte apelante, pág. 104.
[16] Apéndice 5 de la parte apelante, pág. 106.
[17] Apéndice 7 de la parte apelante, pág. 290.

es base suficiente para establecer un caso *prima facie* por discrimen de edad bajo la Ley Núm. 100, *supra*.

Por último, en cuanto a la causa de acción bajo la Ley Núm. 115, *supra*, el señor Santos Rivera sostiene que erró el TPI al concluir que este no había podido establecer su caso *prima facie* debido que la única actividad protegida fue la radicación de un cargo por discrimen ante las agencias administrativas, la cual había ocurrido posterior a la fecha en que le notificaron el traslado de posición al puesto de anfitrión.

En el derecho discutido señalamos que para entablar una acción por represalias bajo la Ley Núm. 115, *supra*, se debe establecer un caso *prima facie* demostrando que: (1) participó de una actividad protegida según dispone la ley; y (2) que hubo una acción adversa en su contra posterior a ello. Por tanto, el señor Santos Rivera debe probar que participó de una actividad protegida y que, subsiguientemente, el Hospital tomó una acción adversa en su contra.

El 16 de enero de 2020, el señor Santos Rivera radicó un cargo de discrimen ante el EEOC y la UAD, y de inmediato le notificó el mismo a la Mennonite.[18] Es un hecho no controvertido que previo a que el señor Santos Rivera presentara las querellas ante la EEOC y la UAD, oficiales de Recursos Humanos ya le habían notificado que sería trasladado al puesto de anfitrión en la sala de emergencias.[19] Surge, además, que la decisión de Mennonite de remover al señor Santos Rivera como oficinista de récord médicos se debió al pobre desempeño de este en la ejecución de su puesto, para salvaguardar su salud y la sana administración del Hospital.[20] Ciertamente, de la prueba documental presentada por la parte querellada surge que el

---

[18] Apéndice de la parte apelante, págs. 24-28.
[19] Apéndice 5 de la parte apelante, pag. 70 y Apéndice 7 de la parte apelante, pág. 218.
[20] Apéndice 5 de la parte apelante, pags. 161-165.

señor Santos Rivera no cumplía con los requisitos de la posición que ocupaba al momento de su evaluación.

Establecido lo anterior, resulta que el señor Santos Rivera no ha sufrió una acción adversa en la remoción de su puesto, pues continúa trabajando en el Hospital como anfitrión en el Departamento de Sala de Emergencias. Además, como señalamos anteriormente, retuvo el mismo salario, horario de trabajo y beneficios.

Finalmente, la parte querellante alegó en su *Querella* que el 18 de marzo de 2020, fue suspendido temporeramente -desde el 19 de marzo de 2020 hasta el 26 de octubre de 2020- de empleo y sueldo por motivos de su edad y en represalias por sus actividades protegidas. Sin embargo, de los hechos no controvertidos surge que por motivos del COVID-19, Mennonite tuvo una reducción en su flujo comercial, lo que conllevó una baja en el censo.

Ante esta situación, Mennonite se vio obligado a separar temporalmente del empleo al señor Santos Rivera. Cabe destacar que, el propio querellante reconoció en su deposición que Mennonite lo había suspendido por la baja en el censo debido a la Emergencia del Covid-19.[21] A su vez, recalcó que agradecía estar fuera de su trabajo por las condiciones de salud.[22]

En consecuencia, no existiendo controversia sustancial de hechos esenciales, se confirma la determinación del TPI de declarar Ha Lugar la *Moción de Sentencia Sumaria* presentada por la parte Mennonite.

**IV.**

Por los fundamentos anteriormente expuestos, se confirma la *Sentencia* dictada el 11 de julio de 2023, notificada el 17 del mismo mes, por el Tribunal de Primera Instancia, Sala Superior de Caguas.

---

[21] Apéndice 5 de la parte apelante, pág. 61.
[22] Apéndice 77.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones